IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTOPHER A. THOMPSON,**               Case Number 1:13CV1324

      Petitioner,                               Judge Benita Pearson

      v.                                        Magistrate Judge James R. Knepp, II

**WARDEN LAROSE,**

      Respondent.                               REPORT AND RECOMENDATION

### INTRODUCTION

*Pro se* Petitioner Christopher Thompson, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden LaRose filed a Return of Writ (Doc. 10) with attached exhibits, and Petitioner filed a Traverse (Doc. 11).[1] Respondent then filed a Sur-Reply. (Doc. 12). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated July 22, 2013). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

---

1. Traverse is now termed a Reply. *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Ohio's Eighth District Court of Appeals set forth the following findings of fact:

[¶3] On August 3, 2010, Cleveland police officers responded to East 135th Street and Byron Avenue for a report of a male shot. EMS transported the male, Donald Davis, to the hospital. He had been shot in the leg. Officers tried to interview Davis at the hospital, but Davis would not answer their questions.

[¶4] The next day, Detective Gerald Sowul went to the hospital to interview Davis. Davis described the man who shot him and told the detective the shooter's name was "Chris Thomas." Detective Sowul, who was familiar with Thompson, believed "Chris Thomas" to be Thompson.

[¶5] Detective Sowul generated a photo array and returned to the hospital the next day. A MetroHealth Hospital police officer testified that he presented the photo array to Davis, who "immediately" identified Thompson as the shooter. The officer testified that Davis was "quite adamant that was the male that shot him."

[¶6] Thompson was arrested in December 2010. He was placed in county jail and immediately began to make phone calls from the jail to his girlfriend, Risha Lumbus.

[¶7] Sergeant Phil Christopher of the Cuyahoga County Sheriff's Office testified that he and sheriff's office employee Maureen Anthony downloaded the recorded calls. Sergeant Christopher testified that each jail inmate is given an identification number and that number, along with the last four digits of an inmate's social security number, must be inputted when an inmate makes a phone call. During trial, the prosecutor played numerous recorded jailhouse phone calls made from Thompson's inmate number. During these phone calls, Thompson told various people to make sure Davis did not show up for trial. In a December 22, 2010 phone call Thompson told Lumbus,

[m]an, you all gotta put some pressure on dude. Dude gonna have to disappear. * * * He can't show up in court. * * * You gotta make dude understand. They gonna be looking for him. If they end up catching up with him, he need to tell them that ain' the guy that did it. He look like him, but that ain't the dude that did it.

[¶8] Sergeant Christopher testified that he also recovered phone calls Thompson made to Lumbus using another inmate's identification number. During these calls, Thompson told Lumbus and another man, "Black," to tell Davis to stay "out of the way," but if Davis was forced to testify "to stick to his story and come up with why he said that I'm the one who did it and why he changing his statement." During one call, Thompson had Lumbus call his

attorney and the attorney advised Thompson not to try to get Davis to miss court and told him his jailhouse phone calls were being recorded. At this point in the recorded conversation, Thompson admitted he was on another inmate's account.

[¶9] Davis failed to appear for the first scheduled trial date and was arrested on a warrant. The police tried to speak with him about the shooting, but he would not answer their questions.

[¶10] Davis appeared for the second scheduled trial date. He testified that, on August 3, 2010, he was riding in the backseat of a car with a man named "Corday." Corday and his cousin, "Dean," were also sitting in the back seat. Davis and Corday began to argue about "old stuff from back in the day." Davis got out of the car, yelling. He began to walk away but was shot in the leg. According to Davis, "[t]here was a car full of people, I don't know who shot me."

[¶11] Davis testified that he identified Thompson as the shooter because a friend had told him that Thompson shot him. He also testified that shortly before trial was to commence, he told Detective Sowul that he did not know who shot him. When the prosecutor asked Davis why he changed his story, he testified that he identified Thompson because his friend gave him that name and he could not be expected to remember what happened the day of the shooting "piece by piece." Davis further denied being warned not to come to court or offered money to change his story. Davis admitted he did not want to testify against Thompson and that the prosecutor "had to do a little bit of work" to get him to appear for trial. He also admitted to identifying Thompson in the photo array, circling his picture and writing "[t]his is the guy who shot me" next to the photo, and signing and dating his identification of Thompson.

[¶12] On cross-examination, Davis testified that he was "not sure" that it was Thompson who shot him and he did not know who shot him. On redirect examination, Davis admitted Thompson was one of the passengers in the car, but reiterated that he did not know who shot him.

[¶13] Lumbus testified that Thompson called her while he was in jail and they discussed the case. She also identified Thompson's and her voice in some of the recorded phone conversations.

[¶14] Thompson was convicted of all charges. The trial court sentenced him to a total of ten years in prison.

(Doc. 10-1, at 5-8.)

## PROCEDURAL BACKGROUND

The relevant procedural history is undisputed by the parties and was accurately summarized in Respondent's brief, therefore it is incorporated herein with only minor changes. (Doc. 10, at p. 4-7; Doc. 11, at p. 1-2).

### *State Trial Court*

On August 18, 2010, a Cuyahoga County, Ohio grand jury indicted Petitioner on one second-degree felony O.R.C. 2903.11(A)(1) Felonious Assault charge with a one-year firearm specification and a three-year firearm specification; one second-degree felony O.R.C. 2903.11(A)(2) Felonious Assault charge with a one-year firearm specification and a three-year firearm specification; and one third-degree felony O.R.C. 2923.13(A)(3) Having Weapons Under Disability charge ("HWUD"). (Doc. 10-1, at p. 19-20). The offenses were prosecuted in Cuyahoga County Common Pleas Court Case No. CR-10-540967-A, *State v. Christopher Thompson.* (Doc. 10-1, at p. 1-2).

Petitioner had legal representation throughout the trial court proceedings. After trial, a jury found Petitioner guilty of the two second-degree felony Felonious Assault charges with one and three year firearm specifications and the third-degree felony HWUD charge. (Doc. 10-1, at p. 1-2). On May 19, 2011, the trial court merged the Felonious Assault convictions and firearm specifications for sentencing purposes and sentenced Petitioner to a mandatory three prior and consecutive years in prison for the firearm specification; five years in prison for the Felonious Assault conviction; and two consecutive years in prison for the HWUD conviction. (Doc. 10-1, at p. 1-2). Petitioner's aggregate prison sentence is ten years and his maximum sentence expiration date is not until December 14, 2025. (Doc. 10-1, at p. 1-2).

***Direct Appeal***

On June 16, 2011, Petitioner, through counsel, timely filed a notice of appeal in Ohio's Eighth District Court of Appeals. (Doc. 10-1, at p. 21-22). Petitioner raised three assignments of error:

> 1. THE DEFENDANT WAS DENIED A FAIR TRIAL IN THAT THE PRE-TRIAL IDENTIFICATION TESTIMONY OUGHT TO HAVE BEEN SUPPRESSED.
>
>> A.  Trial Counsel ought to have filed a motion to suppress.
>>
>> B.  The trial court ought to have instructed the jury that they could consider noncompliance with the provision of R.C. §2933.83 in determining the issue of reliability.
>
> 2. THE TRIAL COURT ERRED IN ALLOWING RECORDED TELEPHONE CONVERSATIONS INTO EVIDENCE WITHOUT THE RECORDINGS BEING PROPERLY AUTHENTICATED.
>
> 3. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

(Doc. 10-1, at p. 26). The State filed a brief in response. (Doc. 10-1, at p. 55-77). The appellate court affirmed Petitioner's convictions and sentences under Case No. CA-11-96929, *State v. Christopher Thompson* and journalized the decision on March 8, 2012. (Doc. 10-1, p. 3-18).

***Ohio Supreme Court Appeal***

On April 23, 2012, through counsel, Petitioner timely filed an appeal notice in the Ohio Supreme Court. (Doc. 10-1, at p. 78). Petitioner set forth two propositions of law in his jurisdictional memorandum:

> 1. IF TRIAL COUNSEL DOES NOT ASK THE COURT TO SEVER A WEAPONS UNDER DISABILITY CHARGE FROM ANY OTHER COUNTS THAT ARE BEING TRIED TO THE JURY AND ASK THAT THE WEAPONS UNDER A DISABILITY CHARGE BE TRIED TO THE JUDGE, IT IS PER SE CONSTITUTIONALLY DEFICIENT PERFORMANCE.
>
> 2. IF THE PROCEDURES IN R.C. 2933.83 ARE NOT FOLLOWED, THE TRIAL COURT MUST INSTRUCT THE JURY THAT IT MUST DECIDE

THE RELIABILITY OF THE IDENTIFICATION IN LIGHT OF THE TESTS IDENTIFIED IN R.C. 2933.83.

(Doc. 10-1, at p. 83). The State filed a waiver of memorandum in response. (Doc. 10-1, at p. 114).  On June 20, 2012, upon consideration of the jurisdictional memoranda filed in the case, the Ohio Supreme Court denied leave to appeal under Case No. 12-0703. (Doc. 10-1, at p. 115).

### FEDERAL HABEAS CORPUS

On June 14, 2013, pursuant to 28 U.S.C. § 2254, *pro se* Petitioner filed the instant Petition for a writ of habeas corpus raising the following grounds for relief:

Ground One: Trial Counsel failed to ask the court to sever a Weapons Under Disability charge from any other counts that are being tried to the jury and ask that the Weapons Under Disability charge be tried to the judge, which constitutes per se constitutionally deficient performance.

Ground Two: Due Process rights were violated due to the State failing to follow the procedures in newly enacted R.C. 2933.83. If these procedures are not followed, the trial court must instruct the jury that it must decide the reliability of the identification in light of the tests identified in R.C. 2933.83.

(Doc. 1).

### JURISDICTIONAL ISSUES

Respondent argues ground two of the Petition should be dismissed as procedurally defaulted. (Doc. 10, at p. 19-27).

### *Procedural Default*

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the Petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). One way procedural default occurs is when the last state court rendering a decision makes its judgment on a procedural bar. *Harris v. Reed*, 489 U.S.

255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue.

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1.  The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2.  The Court then determines whether the state courts actually enforced their procedural sanction;

3.  The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4.  Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This is a power derived from the court's equitable discretion. *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). The Supreme Court has held that such an inquiry requires a

petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty".  *Id.* (quoting *Stone v. Powell*, 428 U.S.  465, 492–93 (1976)).

Ground Two

In ground two, Petitioner alleges the trial court violated his Constitutional right to due process because the State failed to follow the procedures for witness identifications set forth in R.C. § 2933.83 and the trial court failed to give proper instruction to the jury on the reliability of identifications. (Doc. 1, at 5). Respondent claims Petitioner waived this argument because it was not raised in the trial court as a contemporaneous objection and further, Petitioner did not comply with Ohio Appellate Rule 12(A)(2). (Doc. 10, at 20-27). Thus, the *Maupin* standard applies.

Applying the first *Maupin* prong, one applicable state procedural rule cited is Ohio Criminal Rule 30(a), which holds in relevant part, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict". *See Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Petitioner does not question the applicability of Ohio's contemporaneous objection law nor does he claim to have objected at trial. The second applicable procedural rule is Ohio App.R. 12(A)(2), which states a reviewing court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based."  Petitioner argues the procedures in R.C. § 2933.83 were not followed, "but does not support this assertion with any citation to the record." (Doc. 10-1, at p. 14).

Next, the Eighth District Court of Appeals clearly relied on the contemporaneous objection rule and Ohio App.R. 12(A)(2) in its decision. The court of appeals held:

[¶16] In the first assignment of error, Thompson argues that the pretrial identification process was tainted.

[¶17] The identification of a defendant derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process. *Neil v. Biggers, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).* But because Thompson failed to object to the identification procedure at trial, he has waived all but plain error. *State v. Rox, 8th Dist. No. 89244, 2007 Ohio 6315, 2007 WL 4200671, ¶ 6.* "Under the plain-error analysis * * * and, in order to warrant a reversal of the convictions, [a party] must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *State v. Waddell, 75 Ohio St.3d 163, 166, 1996 Ohio 100, 661 N.E.2d 1043 (1996).*

[¶18] In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong **[**7]** test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Harris, 2d Dist. No. 19796, 2004 Ohio 3570, 2004 WL 1506227, ¶ 19*; *State v. Thompson, 8th Dist. No. 90606, 2009 Ohio 615, 2009 WL 344858, ¶ 32.* Thus, this court must determine "whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills, 120 Ohio App. 3d 320, 324-325, 697 N.E.2d 1072 (8th Dist. 1997).*

[¶19] If a defendant meets the first prong, then the second part of the inquiry focuses upon five factors necessary to assess the reliability of the identification, despite an unduly suggestive procedure: (1) the witness's opportunity to view the defendant at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's description of the defendant prior to the identification, (4) the witness's level of certainty when identifying the defendant at the confrontation, and (5) the length of time that has elapsed between the crime and the confrontation. *Biggers* at *id.*; *State v. Williams, 172 Ohio App.3d 646, 2007 Ohio 3266, 876 N.E.2d 991 (8th Dist.).*

[¶20] Thus, our first step is to determine whether Thompson has established that the identification procedure was unreasonably suggestive. Davis testified that he was familiar with Thompson "from the bar." Detective Sowul testified that he developed Thompson as a suspect from Davis's description of his shooter and the name Davis gave him, "Chris Thomas." The detective outlined the process he used to generate the photo array, which included a photo of Thompson and five other similar looking males. He then gave the photos to a MetroHealth Hospital police officer to conduct the photo identification. Detective Sowul testified that this process, known as a blind administration, is where the administrator of the photo array does not know the identity of the suspect; this is to avoid "tainting the process." MetroHealth's police officer testified that he showed the photo array to Davis, who identified Thompson as

9

his shooter. Davis circled Thompson's picture, and both Thompson and the officer signed the photo array.

[¶21] Based on these facts, there is no evidence to suggest that the pretrial identification of Thompson was unduly suggestive. Because the first prong has been met, we need not consider the reliability of the identification.

[¶22] Thompson also argues that the trial court erred in failing to instruct the jury that they could consider noncompliance with *R.C. 2933.83* in determining the issue of reliability. Because Thompson did not object to this omission at trial, we also review this claim solely for plain error.

[¶23] Effective July 7, 2010, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups must adopt specific procedures for conducting the lineups. *R.C. 2933.83*. These procedures include the preference for a blind administrator when one is available. *R.C. 2933.83(B)*. The statute further provides that "[w]hen evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to [the statute], is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." *R.C. 2933.83(C)(3)*.

[¶24] Thompson argues that the photo lineup did not comply with *R.C. 2933.83*; therefore, he is entitled to a new trial. He claims that procedures set forth in the statute were not followed, but does not support this assertion with any citation to the record. *App.R. 12(A)(2)* provides that a reviewing court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based." In other words, it is not a reviewing court's job to make an appellant's argument for him. Absent evidence to support this claim and given our plain error review, we find Thompson's claim without merit.

(Doc. 10-1, at p. 11-14). Importantly, "[a] state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default." *Jalowiec v. Bradshaw*, 2008 WL 312655, at *23 (N.D. Ohio), *aff'd*, 657 F.3d 293 (6th Cir. 2011) (citing *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004)). Thus, the appellate court clearly relied upon procedural bars in denying Petitioner's assignment of error.

Third, "[t]he Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of

cause for the waiver and resulting prejudice". *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968). Similarly, Ohio App.R. 12(A)(2) is a rule with a "discernible standard of application" and is thus, "an adequate and independent state rule which bars federal review." *Banks v. Bradshaw*, 2008 WL 4356955, at *11 (N.D. Ohio); *see Sailor v. Bradshaw*, 2006 WL 50670901, at *20-21 (N.D. Ohio).

Next, Petitioner claims the cause of his failure to object at trial was due to ineffective assistance of counsel. (Doc. 11, at p. 7). While "ineffective assistance of counsel may constitute cause," an attorney's error or failure to raise a claim does not. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994) (citing *Murray,* 477 U.S. at 488). Instead, Petitioner must identify "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Here, there was no such impediment. Furthermore, the court of appeals determined Petitioner's trial counsel was not unconstitutionally ineffective because the identification procedures utilized were not "unduly suggestive" such that Petitioner would not have succeeded in suppressing the evidence, even if counsel had requested it. (Doc. 10-1, at p. 19).

Last, Petitioner's argues his violation of Ohio App.R. 12(A)(2) was caused because the statute he relied upon was too new and thus, no case law existed to support his argument. (Doc. 11, at p. 8-9). However, Petitioner misconstrues the requirements of Ohio App.R. 12(A)(2), he was not required to cite case law, his reference to the statute suffices to ground his error in the law; however he was required to cite to the evidence in the record which supported his assertion that R.C. § 2933.83 had been violated. *See e.g., State v. Miller*, 56 Ohio App.3d 130 (1st Dist. 1988) (holding an appellant must tell the appellate court specifically where the trial court's errors are located in the transcript); *Four Winners, Inc., v. Columbus Dev. Regulation Div.,* 83 Ohio App. 3d 118 (10th Dist. 1992). Petitioner did not do so.

11

Thus, because the Petitioner has not shown adequate cause to waive his procedural default, this Court need not address whether prejudice resulted. Moreover, he has not claimed actual innocence. Accordingly, the undersigned recommends the Court dismiss ground two of the Petition because it is procedurally defaulted.

### STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, AEDPA provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

*Ground One*

In ground one, Petitioner claims he received ineffective assistance of counsel because his trial attorney failed to request the HWUD charge be severed and tried in front of the judge alone. (Doc. 1, at 4). This claim is addressed on the merits.

Effective assistance of trial counsel is guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland*: that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Strickland*, 466 U.S. at 698; *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 686–692).

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of and confidence in the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Review of a *Strickland* claim is doubly deferential in a § 2254 proceeding. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[] . . . is . . . highly deferential – and doubly deferential when conducted through the lens of federal habeas."). This double deference arises because the *Strickland* standard is a general standard, giving a state court even more latitude to reasonably determine that a defendant has not satisfied the standard. *Knowles v. Mirzayance*, 556 U.S. 11, 123 (2009). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. Accordingly, the pivotal question in any § 2254 action that presents an ineffective assistance claim, is "whether the state court's application of the *Strickland* standard was unreasonable." *Id*. at 785.

Here, the Eighth District Court of Appeals overruled Petitioner's ineffective assistance claim as follows:

> [¶34] In the third assignment of error, Thompson claims he was denied the effective assistance of trial counsel. We disagree.
>
> [¶35] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)*. In order to succeed on a claim of ineffective assistance of counsel, Thompson must satisfy a two-prong test: first, he must demonstrate that his trial counsel's performance was deficient. *Id. at 687*. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* To show prejudice, Thompson must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id. at 694*.
>
> [¶36] An attorney who is licensed in Ohio is presumed competent. *Vaughn v. Maxwell, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965)*. Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985)*. Trial counsel is entitled to a strong presumption that all decisions fall within the

14

wide range of reasonable professional assistance. *State v. Sallie, 81 Ohio St.3d 673, 675, 1998 Ohio 343, 693 N.E.2d 267.*

[¶37] Thompson bases his ineffective assistance of counsel claim on counsel's failure to file a motion to suppress and failure to request that the weapons charge be bifurcated. Thompson blames his counsel's errors, in part, on the fact that he retained his attorney a week before trial.

****

[¶39] We are more troubled by defense counsel's decision not to request that the weapons under disability charge be bifurcated from the other charges. As Thompson points out, this court has previously reversed a conviction based on this error. *State v. Jenkins, 8th Dist. No. 91100, 2009 Ohio 235, 2009 WL 147654.* But the decision in *Jenkins* was based on the cumulative nature of defense counsel's errors, not solely on the failure to move to bifurcate a disability charge.

[¶40] In this case, after reviewing the entire record, we cannot conclude that defense counsel's performance fell below an objective standard of reasonable representation. The failure to bifurcate the disability charge did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the outcome of trial would have been different had the charge been separated.

(Doc. 10-1, at 18-20).[2]

Upon review, the Court notes that even though the appellate court questioned trial counsel's action they concluded it was not deficient, a conclusion that is entitled to deference. The "Constitution guarantees only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Issac*, 456 US 104, 133-34 (1982). Here, Petitioner attacks the singular decision of trial counsel not to request bifurcation of charges as *per se* deficient performance. However, he provides citation to only one Ohio case, *State v. Jenkins*, 2009 WL 147654, to establish this right. (Doc. 10-1, at p. 49). Contrary to Petitioner's argument, *Jenkins* does not create a constitutional right to severance of charges and does not establish a *per se* violation of the Sixth Amendment. Rather, the court in

---

2. Petitioner raised other claims of ineffective assistance of counsel at the state court level (Doc. 10-1, at p. 28) however his Petition to this Court only asserted the failure to sever the HWUD charge as a ground for relief (Doc. 1, at 4).

*Jenkins* held failure to bifurcate the charges by itself would not constitute ineffective assistance of counsel. *Id*. at ¶ 17. Petitioner has not shown deficient performance thus, the Court need not analyze the second prong: prejudice. *See Strickland*, 466 U.S. at 487.

As in state court, it is Petitioner's burden to establish deficient performance; he has failed to do so. Accordingly, the court of appeals' application of the *Strickland* test was reasonable and Petitioner's assertion to the contrary is without merit. Therefore, Petitioner's first ground for relief should be dismissed.

CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Court dismiss the Petition.

s/James R. Knepp II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).